UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| TERRY MADISON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 13-3317 |
| GREGG SCOTT, *et al.* | ) ) ) |
| Defendants. | ) |

## SUMMARY JUDGMENT OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se and civilly committed at Rushville Treatment and Detention Facility, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging Fourteenth Amendment due process and excessive force claims. The matter comes before the Court for ruling on the Defendants' respective motions for summary judgment. (Docs. 48, 61).

## PRELIMINARY MATTERS

Defendants filed a Motion for Leave to File Document under seal. (Doc. 49). Defendants seek to file a copy of the security surveillance video footage from the day in question under seal. Plaintiff has not opposed this motion. Nonetheless, the Court must

make its own determination as to whether good cause exists for sealing the record.  See Bond v. Utreras, 585 F.3d 106, 1068 (7th Cir. 2009); Citizens First National Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 944 (7th Cir. 1999)(court must makes its own determination whether good cause exists for sealing the record, despite the parties' agreement); CDIL Local Rule 5.10(2)("The Court does not approve of the filing of documents under seal as a general matter.  A party who has a legal basis for filing a document under seal without a prior court order must electronically file a motion for leave to file under seal.").  Upon review, the video depicts many of the residents at the Rushville facility who are not parties in this case.  The video also depicts the manner in which security pat downs are conducted and the manner in which some residents were able to avoid them.  Disclosure of this information would create unnecessary security risks for officials and residents within the Rushville facility.  Accordingly, Defendants' Motion for Leave to File is granted.  (Doc. 49).

## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## FACTS

Plaintiff is civilly committed at Rushville Treatment and Detention Facility ("Rushville" or "TDF"). The Defendants were employed at the TDF in various capacities during the relevant time period: Defendant Jumper was the Clinical Director; Defendant Groot was a team leader; and, the remaining defendants were Security Therapy Aides ("STA"). As command hierarchies go, an

STA-I is the lowest rank, STA-IV is the highest. All incidents occurred during a 10-day period in March-April 2013.

On March 23, 2013, TDF officials were conducting pat downs on residents returning from the yard. When Plaintiff came inside, he did not submit to a pat down and requested to be taken to the security scanner machines instead. Plaintiff's request was first denied by Defendant Chenoweth, an STA-I, and later denied by Defendant Pennock, an STA-II, and Defendant Hogas, an STA-IV, as Plaintiff worked his way up the chain of command. Each of these defendants informed Plaintiff that he would need to submit to a pat down because there were no exceptions. Plaintiff persisted in his request. As a result, TDF security staff physically grabbed Plaintiff, placed him in handcuffs, and conducted a pat down search. Defendants Zimmerman, Wilson, and Cleavinger, all STAs, were also present during this incident. Defendants Jumper, Groot, and Haage were not.

A video of the incident depicts the following in poor video quality and without sound: residents filter through the lone door from outside. Plaintiff enters through the door and steps to the side. An STA motions for Plaintiff to step forward for a pat down.

Plaintiff does not move.  The STA approaches Plaintiff.  Plaintiff raises his right arm several times to point towards something outside the view of the camera.  Two male STAs and a female STA in a white shirt, presumably Defendant Pennock, speak with Plaintiff for a few minutes.  Another female STA arrives, presumably Defendant Hogas.  At that point, the male STAs grab Plaintiff.  The angle of the video does not depict the application of the handcuffs or the pat down that ensued.  The only movement that could be construed as sudden is the moment the STAs take tiny steps in unison towards the wall shortly after grabbing Plaintiff's arms.  Plaintiff was not taken to the ground at any time.  Plaintiff is later escorted off camera.

    After this incident, Plaintiff was assigned to Temporary Special Management status for three days until his hearing in front of the Behavioral Committee, which consisted of Defendants Jumper, Groot, and Haage.  Prior to the hearing, Plaintiff was provided at least 24 hours' notice, and an ability to identify witnesses on his behalf.  At the hearing on March 26, 2013, Plaintiff was allowed to make a statement in his defense.  The Behavioral Committee, however, did not hear testimony from Plaintiff's witnesses before

finding Plaintiff guilty of Interfering with Facility Operations, a major violation. Plaintiff was assigned to seven (7) days "close" status, and a drop to "intermediate status" with "appropriate modifications regarding allowed personal property." (Doc. 48-5 at 32). Plaintiff's only interaction with Defendants Jumper, Groot, and Haage for the ten (10) days relevant to this lawsuit was during this hearing. Pl. Dep. 60:19-61:2; 101:4-8.

After initially being placed on Temporary Special Management status, Plaintiff did not have any further interaction with Defendants Chenoweth, Zimmerman, Cleavenger, Wilson, Pennock, or Hogas while he was assigned to that status, nor did he interact with them while on "close" status for the seven days thereafter. Pl. Dep. 108:12-16.

While on Temporary Special Management and close status, Plaintiff was allowed outside his room for approximately 12-13 hours each day. He received his meals and personal hygiene items. He was also allowed to watch television in the dayroom, play cards, read books, and purchase items from the commissary. While Plaintiff was not allowed to use the phone during those 10 days, he was permitted to write letters to his family, though he chose not to.

Plaintiff alleges that he was denied medically necessary shoes for a short time.  Plaintiff did not suffer any injury as a result of being without his shoes.  Pl. Dep. 110:3-6.

## ANALYSIS

### Excessive Force

Plaintiff asserts excessive force and failure to intervene claims against Defendants Chenoweth, Zimmerman, Cleavenger, Wilson, Pennock, and Hogas related to the events that transpired on March 23, 2013.  As a civilly committed detainee, Plaintiff's claims arise under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's proscription against cruel and unusual punishment.  Sain v. Wood, 512 F.3d 886, 893 (7th Cir. 2008).  Civil detainees "are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish."  McGee v. Adams, 721 F.3d 474, 480 (7th Cir. 2013) (quoting Youngberg v. Romeo, 457 U.S. 307, 321-22 (1982)).  The analysis under the Fourteenth Amendment is the same for both pretrial detainees and those civilly committed.  Davis v. Wessel, 792 F.3d 793, 800 (7th Cir. 2015).

Accordingly, the Supreme Court's recent decision in <u>Kingsley v. Hendrickson</u>, 135 S. Ct. 2466 (2015), provides the applicable standard for claims of excessive force against a civilly committed detainee. Under <u>Kingsley</u>, the Due Process Clause of the Fourteenth Amendment requires only that Plaintiff show "that the force purposely or knowingly used against him was objectively unreasonable." <u>Id.</u> at 2473. The inquiry into objective unreasonableness is not mechanical; it depends on the facts and circumstances in each case. <u>Id.</u> (citations omitted). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." <u>Id.</u> A court must also consider "'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in the judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" <u>Id.</u> (quoting <u>Bell v. Wolfish</u>, 441 U.S. 520, 540 (1979)).

Civilly committed detainees may be subjected to institutional rules designed to ensure safety and security without raising

constitutional concerns.  Allison v. Snyder, 332 F.3d 1076, 1079 (7th Cir. 2003).  Plaintiff was thus required to follow the orders of TDF security staff on March 23, 2013.  Cf. Lewis v. Downey, 581 F.3d 467, 476 (7th Cir. 2009) ("Orders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them." (internal quotations omitted)).  He did not, and by doing so, Plaintiff was "attempting to assert his authority over a portion of the institution and its officials."  Id. "Such refusal and denial of authority places the staff and other [residents] in danger."  Id.

     Plaintiff refused at least three direct orders to submit to a pat down from security officers on March 23, 2013.  Plaintiff further gave no indication that he intended to comply with the Defendants' commands.  From the video, it appears that the Defendants who physically contacted Plaintiff applied no more force than was necessary to apply handcuffs and conduct the pat down.  Plaintiff was not taken to the ground, nor is there evidence on the video that Plaintiff was "slammed" into the wall as he claims.  There is no evidence in the record to show that the actions of the Defendants in this case were unreasonable, especially in light of Plaintiff's

continued noncompliance with the TDF security staff's orders.  On this record, no reasonable juror could find that Defendants Chenoweth, Zimmerman, Cleavenger, Wilson, Pennock, and Hogas actions were objectively unreasonable.

As no underlying constitutional violation for excessive force is present, the Defendants are also entitled to judgment as a matter of law on the failure to intervene claims.  See Harper v. Albert, 400 F.3d 1052, 1064 (7th Cir. 2005) (a failure to intervene claim cannot survive in the absence of a finding that excessive force was used (citing Fillmore v. Page, 358 F.3d 496 (7th Cir. 2004)).

## Humiliating Pat-Down

In his complaint, Plaintiff alleged that the pat down conducted was intentionally humiliating.  Specifically, Plaintiff alleged in his Complaint that the Defendants conducting the pat down "fondled the Plaintiff's penis, grabbed and fondled his [testicles] and stuck their hands up his buttock area." (Doc. 1 at 4, ¶ 7).  While not as specific as the Complaint, Plaintiff reiterates this allegation in his deposition testimony and response to the Defendants' Motion for Summary Judgment.

"An unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant." Washington v. Hively, 695 F.3d 641, 643 (7th Cir. 2012) (collecting cases). Defendants argue that Plaintiff has not described anything atypical of a pat-down search. However, review of the video shows that the pat downs conducted on other residents did not include a pat down of the penis and buttocks areas. Plaintiff's testimony, if believed, suggests that the pat down search to which he was subjected was more intrusive.

A more intrusive search does not, on its own, mean that Plaintiff's constitutional rights were violated. If the Defendants "had no intention of humiliating the plaintiff or deriving sexual pleasure from [conducting the search], but [were] merely overzealous in conducting the pat down...there was no deliberate violation of a constitutional right...." Id. at 643. On this point, the record is incomplete.

The Defendants have failed to provide any affidavits or other evidence that explains why Plaintiff was subjected to a more

intensive search. On the other hand, Plaintiff's testimony that the Defendants only instructed him to remain quiet during this pat down and did not offer sexually suggestive or humiliating comments suggests that their actions did not rise to the level of a constitutional violation. Pl. Dep. 22:18-24:14. Absent evidence of the Defendants motivations for conducting the search and the extent of the search, the Court cannot determine whether a genuine issue of material fact exists for trial or conduct a qualified immunity analysis.

On these grounds, Defendants' motion for summary judgment, as it relates to Defendants Chenoweth, Zimmerman, Cleavenger, and Wilson is denied with leave to renew.

## Due Process Claims

Plaintiff asserts that the failure of Defendants Jumper, Groot, and Haage to consider the testimony of his witnesses during the behavioral committee hearing violated his due process rights. Plaintiff does not argue that these Defendants failed to provide adequate notice, an opportunity to be heard at the hearing, or written notice of the Behavioral Committee's findings, as there is no dispute that these procedural safeguards were provided.

The Behavioral Committee found Plaintiff guilty of "Interfering with Facility Operations." (Doc. 48-4 at 2). This offense prohibits "[b]ehavior that interferes with the smooth and orderly operation of the [TDF]." (Doc. 48-6 at 3). Plaintiff told the Committee that he did not refuse a pat down, he requested to be taken to the scanner machine. (Doc. 48-4 at 1). According to Plaintiff, his witnesses would have testified consistently with his statement without adding anything new. Pl. Dep. 87:2-6 (Plaintiff had no knowledge that his witnesses were going to say anything different than what he had already told the Behavioral Committee); id. 72:5-18 (witnesses were going to testify to the same thing Plaintiff told the committee).

By finding Plaintiff guilty of the offense, the Committee adopted Plaintiff's version of the events, or at least did not make a finding inconsistent therewith. Even though Plaintiff maintains he did not refuse a pat down, he never disputed his failure to submit to one. His continued requests to be taken to a scanner despite the staff's direct orders to submit to a pat down support the Committee's findings.

Any evidence that Plaintiff sought to offer would have only corroborated or been duplicative of the evidence already presented

and adopted by the Committee. Because of this, Defendants Jumper, Groot, and Haage were not required to permit the presentation of such evidence in order to afford Plaintiff his due process rights. Scruggs v. Jordan, 485 F.3d 934, 939-40 (7th Cir. 2007). Therefore, the Court finds that no reasonable juror could find that Plaintiff's procedural due process rights were violated.

Plaintiff also challenges his placement on Temporary Special Management status for three days, and his placement on "close" status for seven (7) days following his hearing. Civil detainees have the right "to complain of a deprivation of liberty without due process of law if the restrictions constitute a deprivation within the meaning of the Constitution...." Miller v. Dobier, 634 F.3d 412, 415 (7th Cir. 2011). However, regardless of whether the confinement is civil or criminal, "[d]isciplinary measures that do not substantially worsen the conditions of confinement of a lawfully confined person are not actionable under the due process clause." Id. at 414-15.

Plaintiff's initial placement on Temporary Special Management status was proper as temporary placement in more restrictive conditions pending review of alleged rule violations does not offend the due process clause; legitimate security interests exist in not

allowing one suspected of such to roam free within the facility. See Holly v. Woolfolk, 415 F.3d 678, 680 (7th Cir. 2005) (analogizing temporary segregation for an alleged violation of a disciplinary rule to an arrest without a warrant pending a probable cause hearing). Even if, as Plaintiff alleges, he was deprived of his special shoes for the three days he spent on Temporary Special Management status, there is no evidence that this deprivation made Plaintiff's conditions of confinement more restrictive or harsher as to implicate due process concerns. Nor is there any evidence that the named Defendants had any involvement with his confinement during this time.

Plaintiff's placement on "close" status also did not implicate due process concerns. In Miller, the Seventh Circuit held that "close" status at Rushville does not constitute a sufficient deprivation to implicate due process concerns. Miller, 634 F.3d at 415. This is corroborated by Plaintiff's deposition testimony that he was allowed outside his room for approximately 12-13 hours each day, received his meals and personal hygiene items, allowed a plethora of entertainment options and allowed to purchase items

from the commissary. Furthermore, Plaintiff spent approximately one-third of the time on close status as did the plaintiff in Miller.

Therefore, the Court finds that no reasonable juror could conclude that placement on Temporary Special Management status for three days, and placement on "close" status for seven days violated Plaintiff's rights to due process.

**IT IS THEREFORE ORDERED:**

1) **Defendants' Motion for Leave to File Under Seal [49] is GRANTED.**

2) **The Motion for Summary Judgment [48] filed by Defendants Jumper and Groot is GRANTED in its entirety. The clerk of the court is directed to dismiss Defendants Jumper and Groot with prejudice.**

3) **The Motion for Summary Judgment [61] filed by Defendants Hogas, Pennock, Chenoweth, Zimmerman, Cleavenger, and Wilson is GRANTED in part, and DENIED in part. The motion is DENIED with respect to Defendants Chenoweth, Zimmerman, Cleavenger, and Wilson on the issue of the humiliating pat down search, and GRANTED as to all other claims and defendants. The clerk of the court is directed to dismiss Defendants Hogas, Haage, and Pennock.**

**4) Defendants Chenoweth, Zimmerman, Cleavenger, and Wilson are granted leave to renew their motion for summary judgment with respect to Plaintiff's claims of a humiliating pat down search within 28 days of this Order. If the Defendants do not renew their motion within this timeframe, the Plaintiff is directed to file a motion to set trial date.**

ENTERED:     September 28, 2015

FOR THE COURT:

*s/ Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE